13.10.35 13.10.87 Volunteer Energy Services Incorporated v. Option Energy LLC Oral Argument 15 minutes per side Rorigan, Rorigen, in for the Defendant Appellant Cross-Appellate. Good morning, your honors. May it please the court, Kevin Rorigan on behalf of the Appellant Option Energy. I've reserved five minutes for you. You may. Your honors, this is a breach of contract, well a diversity case, including a breach of contract claim under which Ohio law applies. We have raised two points on appeal, one being that the district court correctly interpreted the non-compete provision of the of the contract at issue. I would like to rely primarily on my briefs for those. Could you help me just put this in context? Yes. Who are the customers? I have never been in the natural gas business. I don't know how it works. I know that it's piped in normally to somebody and is the volunteer energy services now, what is their role in the distribution versus option energy and who are the customers that were taken and so on? Sure. I couldn't find anything in the briefs that tell me how the business actually operates. Sure. What is going on here is that volunteer energy is what's known as an alternative energy supplier. They provide natural gas. The customers that we're talking about here are businesses and individuals, homeowners, consumers, yes. So it would be thousands of customers. Potentially. It is a program in the state of Michigan and in many other states where and all alternative suppliers such as volunteer. Volunteer energy, are they in the pipeline business? You know, I will confess here, Judge Merritt, I do not know the exact mechanics. I believe that what they do is they essentially purchase some of the volume that the local utility gas company provides anyway and so it's all it's all kind of done on paper. They don't actually have a pipeline. They're not the big, they're not Michigan Consolidated Gas. Right. They provide an alternative to the local utilities such as Consumers Energy or Michigan Consolidated. So they're basically sellers of natural gas. That's correct. That's what they do. And Option Energy, they are sellers of natural gas too. Option Energy's role is to act as a broker on volunteers behalf. Option Energy is essentially the sales agent on the ground in Michigan that then goes out and solicits. Option doesn't own any of this gas. No, that's correct. So you're the options, the agent, volunteer is the is the provider? Is the provider of the actual product. Right. There's no exclusive jurisdiction. You can sell to anybody. There's no geographic exclusive jurisdiction. In this particular, in this particular case, this particular agreement, Option Energy was hired as an agent to work solely in the state of Michigan. So that was, there was a geographic limitation in that sense. But, but any, but anyone within Michigan could buy from any of these sources and no supplier has an exclusive jurisdiction to service? That is correct. That is correct. I guess just to be complete about it, the default provider is always the local utility. And unless somebody affirmatively chooses to buy their gas from an alternative supplier such as Option Energy, they can by default get their gas from the local utility. What I'd like to focus on and with is, as I said, I'd like to rely on my brief in terms of the interpretation of the of the non-solicitation provision. We do think that it's clear that the only reasonable interpretation that could have been given to that is that the non-solicitation requirement only only became effective upon termination of the agreement. Council, at least to me, that's an important question. How do you deal, say this is not the best contract I've ever seen, in fact it's one of the worst, but it begins for the term of the agreement and for the longer of A or B, you will not solicit existing customers and then it has at the time of the termination date, but this is all in a clause that begins for the term of the agreement. That's right. How do you say that that's not ambiguous? The reason I think that's not ambiguous is because of what comes in between and there there are two non-solicitation provisions that are that are set forth. There is a non-solicitation with regard to volunteers employees and there is a non-solicitation, the employee clause as we've called it, there's also a non-solicitation clause with regard to volunteers customers. And it is only with regard to the customer clause that the language at the termination of the agreement appears. It also has this sort of strange language under B about two agent following termination, which I don't understand. Yes, and nobody has been able to interpret that at all. But you agree that grammatically it reads for the term of this agreement they will not solicit existing customers at the time of the termination date. That's exactly how it reads grammatically. Right, which makes some oddity because it's very if you rely on the second part it means the first part is meaningless because it isn't for the term of the agreement. Right, and if you only rely on the first part it makes the at the termination of the agreement language. You can certainly read it in a way that option energy option to volunteer energy for that period after the termination. But in addition to that they want it to be true during the agreement itself before you ever get to the period thereafter. So it's very easy to read the two together to make sense out of it and say during the term of the agreement there is a requirement of loyalty and then for however long it is afterward there is also. I think Judge Merritt the best we can say is that this is as Judge Boggs said one of the most poorly written contractual provisions that that anyone has probably ever seen. There are some pretty bad ones out there. And therefore I think that ultimately it's perhaps the fact is that it's simply ambiguous and so one has to get past that and rely on the. The district judge said looking at everything I think both are included. And that the evidence at trial supported what the intent of the parties actually was. What I'd really like to I think the very important point that we raised in our brief and I'd like to discuss today is the fact that that volunteer presented virtually no evidence whatsoever to support the damage award of over half a million dollars. The only evidence that was presented at trial came from their sales manager who stood on the stand and without presenting without putting any facts into evidence regarding sales, regarding cost of production, regarding anything simply conclusively announced that their profit margin that volunteer has per customer or per thousand feet of gas that it sells is a dollar and twenty cents. Do you have a case that says you have to put in an evidentiary piece, a piece of evidence, a document? Do you have anything that would not allow it to be testimonial as long as there was a basis for the testimony? Absolutely. The Ohio law is replete with those cases. We've cited them I think most of if not all of them in our brief. The Connecticut case. Let me ask my question a little more clearly perhaps. Do you have an Ohio case that requires that the damages be shown by documentary evidence as opposed to testimonial evidence? The case I would point to that I think addresses your question Judge Strach is the Rhodes case, an Ohio case cited in our brief. In the Rhodes case, the Ohio court rejected exactly what happened in this case as insufficient proof of damage which is somebody's summary, conclusory statement of what profit margin is. And in the Rhodes case, the court said you have to have some evidence to substantiate what the profit margin that you're testifying to is. Did you offer any evidence that what the fellow said on the stand about what the profit margins were, did you offer any evidence that that was not true? No, but I have two further responses to that issue. Did you even ask him where he got the number? He testified what his formula was or what his methodology would be to get to that number but there was no underlying evidence to support the actual number that he testified to. He's the right kind of guy, right? This is not just some lawyer off the street who's testifying to it. He's the vice president. Well, he wasn't the vice president. He's the sales manager for the Michigan Territory. I mean, wouldn't the proper thing to be cross-examined? You say, well, where did you get A, where did you get B, where did you get C? And you seem to say he did do some of that. And then you would say, well, where's your support for A, B and C? Well, he simply basically said, this is how you calculate profit margin. You take sales, you subtract the cost of production, and what's left over is your profit margin. It looks like to me, counsel, if you wanted to contest that, you would have put on some proof that said that that's all wrong. Well, but there was no proof to contest, and that's exactly the position. He was testifying that I've been in this business a long time, and here is the situation. He may be wrong, maybe he's lying, I don't know. But in order to combat that in an adversary system, normally you have to put on something. Or cross-examining. But, but, the law of Ohio says that it's not, if the evidence, if there's no evidence that's put on to support a damage award, that the Conneco case and the law in Ohio says it does not fall on the burden of the defendant to cross-examine to disprove damages. It's a different case because it was based on not historical fact. This gentleman in our, in this case, in your case, testified, here is the historical usage of the individuals involved. So it was a factual basis that we used as our calculation. Conneco said, well, we have projected sales quotas, and we're going to assume that you successfully fulfill the sales quotas, and that's how we'll calculate damages. Isn't that very distinct from relying on historical data? The only historical data they, that volunteer presented had to do with usage of the customers in dispute. But they didn't present any, no, the issue is they didn't present any evidence to substantiate the gross profit margin that their witness simply testified to without any, without any proof or without any substantiation, without anything from which the fact finder could determine that that profit margin had in fact some basis in fact. I see that I'm out of time. Any other questions, judges? No. Thank you. Thank you. Good morning, your honors. Excuse me. My name is Matt Brown. It's a pleasure to represent Volunteer Energy in this case. I'd like to request of the court before I begin, may I reserve three minutes for rebuttal testimony? You may, but it would only be with respect to your own, your own appeal. You can't re-rebut. Absolutely, your honor. Okay. Thank you very much. I appreciate that. I'd like to begin with the, with Volunteer Energy's assignments of error in this case. But given the questions that have been presented by the court thus far, there's two issues that we can address as it relates to Option Energy's assignments of error that have been brought before the court. We'll begin with the breach of contract, the ambiguity argument that has been espoused by Option Energy in this case. And I believe, Judge Merritt, you were exactly correct when you determined or opined that the language of the contract, though well and artfully drafted as the district court was eloquently enough to state, the way that the contract was drafted allows for a reasonable interpretation for both provisions to be applicable. In particular, for the term of the agreement and for one year after termination of the agreement, Option Energy is prohibited from soliciting customers of Volunteer Energy. There's this clause under that section also that refers to at the time of the termination of the agreement. That simply allows for the possibility that a customer may, during the term of the agreement, because we are dealing with customers on the open market, they could leave Volunteer Energy. And once they're gone, obviously, at that point, as long as it was through no fault or through no transfer by Option Energy, a breach of the contract, they would be, of course, an option. Anything on the record to indicate how many customers they brought to you and how many they took from you and so on? Certainly, Your Honor. We had testimony at trial of approximately 1,200 accounts that had been brought to Volunteer Energy by Option Energy. In the state of Michigan, Sean Hall testified that there were approximately 60,000 accounts that Volunteer Energy has. So that gives you an idea of the total customers that we're dealing with in this particular case. How many did they steal in the sense that you got your 509,000 based on? Almost all of the customers at this point are gone. But up until the time that we were talking about this 12-month window during the term of the contract and for 12 months thereafter, we're dealing with just simply the customers that were transferred to Integris by Option Energy. Roughly how many? About 400, Your Honor, 400 to 450, I want to say. And that would be some of those would have been out of the 1,200 and some would have been out of the ones you had otherwise? No, all of those were out of the 1,200, Your Honor. Okay, thank you. All of those. The damages on the other way, you want to talk about that too? Certainly, Your Honor. You're talking, well, could you, I'm sorry, I guess I don't understand the question, Your Honor. Damages which other way? Treble damages. Yeah, your opinion. Okay. R.S. Simons, thank you, Your Honor. I will certainly do so and I'll do so now. The issue before the district court was the exemplary damages, the treble damages that were awarded under Ohio statute. The concern with regard to the sales commission act under the Ohio statute, what the district court did was because there was no case in Ohio that addresses this issue. So what the district court did was it looked to the Michigan statute and what was happening in Michigan with regards to the similar but not the same statute. In Michigan, the statute provides that if the commissions are not paid within a defined time, then treble damages can be awarded or will be awarded to the party who is entitled to those commissions. Ohio has a very distinct and separate provision in its statute. Although there's a defined time as to when those sales commissions are to be paid, there's a caveat to that with regard to exemplary damages and that is the willfulness. There's a mens rea element to the Ohio statute that is absent from the Michigan statute. So when the legislature drafted the statute in Ohio, the legislature anticipated. The reason, are you saying that the reason you didn't pay those commissions was you basically had a set off, you thought, the other way on this? Absolutely, Your Honor. Thank you. That was your theory anyway. Absolutely, Your Honor. Prior to the enactment of the statute, there was limited, in one case in particular, case law on sales commissions where the court allowed the set off here in Ohio. It's a common law right. It exists in Ohio. When there is a breach of a contract, you can set off damages caused by that contract, obviously, from what you might otherwise owe. When the legislature drafted the statute, the legislature did not write out of the statute the common law right of set off. That was already there. It's still there. What Option Energy is attempting to do is to essentially eliminate that right, even though it's not set out in the statute. What did the district court say about your argument about set off? The district court determined that Michigan did not permit set off, and Ohio would likely interpret it the same way. The court didn't really determine. It just simply said we weren't permitted to. There was no analysis behind it other than citing Michigan's comparable statute. Is there a Michigan case on the question of the set off? There is, Your Honor. What does it say? It says that in Michigan you're not permitted to set off under the commission statute. Your argument has to rely on the fact that there are these words like willful in the Ohio statute and that that should mean something quite different. My question is, and help me on this, to the extent I've had experience with these commission statutes is you have them because you think agents are in a vulnerable position and the people who ought to pay commissions ought to pay the commissions. And so you're trying to say that, well, we had this inchoate right to set off. We didn't have a judgment. We didn't have something where we had loaned him money. We think we would win a suit, and therefore it wasn't willful to pull the string on him. And the judge seemed to think to the contrary. So the question is, why isn't it willful when you owe commissions to say we think we're going to win a lawsuit based on testimony that could be? There was nothing reduced to judgment or even to a co-ed. That is, at that point you didn't know that it was $509,000, did you? Was that written down anywhere? At the point that the set off was? Well, at the point you refused to pay commissions. I mean, in a sense, you're getting a set off in court, right? You've got a $509,000 pot out of which eventually you'll come out balanced. But the question is, at the point that you said we're not going to pay you what we owe you because you owe us something. You've asked several questions, Your Honor, and I'll be happy to answer each and every one of them. If I miss one, just remind me. With regard to the time, the first time that Volunteer Energy set forth its claimed right of set off was right at the time of the breach at the time of the termination. And what you have at that point, you do not know that there's $509,000 of damages. It's a calculation, of course, that's done later in preparation for the trial. However, what you do know, what Volunteer Energy did know at the time, was that its damages were going to far exceed that because, keep in mind, Volunteer Energy's profit margin on this after paying commissions to Option Energy is $1.05 per MCF, whereas the commissions, the $53,000 that are owed, are based on 15 cents per MCF commissions. So you know that there's going to be a significant difference. Help me here. Maybe I'm wrong about this, but help me here. I think the commissions that you weren't paying were commissions on everybody, not just the ones they stole. That's correct, Your Honor. That's correct. Now, with regard to what the district court did when it came to, let me see if I can recall the question. With regard to the willfulness question, the error with the district court was it simply did not provide any assessment or opinion on what Ohio law requires in order to establish willfulness. Your Honor, what you had indicated was the nonpayment of the commissions was willful, but what that would establish, assuming, arguendo, that the right of setoff has been eliminated through the enactment of the statute. What you're suggesting, Your Honor, is that the failure to pay is a violation of the statute, but in Ohio in the Anderson decision from just, I think it was 2000, just a couple years ago by the Ohio Supreme Court, the Anderson decision specifically notes that the violation of a statute is not willfulness per se. You still need to establish under Ohio law an intent to do a wrongful act with the purpose of causing harm to another party, to the adverse party. So in this situation, under Ohio law, the option energy would have to prove that not only was it wrongful for voluntary energy to withhold the commissions, but it was done so with an intent to harm option energy. But that's not what was... How can not paying somebody not intend to cause them harm? It might have been not done out of some overarching hatred of them, but if your client owes you $100,000 and doesn't pay, how can that not intend to cause you harm? Are you saying he knows the harm, but he doesn't intend it? The intent under the statute, I think, is more directed towards the hatred under Ohio law. You do need to have some level of... The usual isn't the usual. I mean, it's a different basis, but people intend the natural consequences of their action. Certainly they do, but in this case, the intent wasn't to cause the harm. The intent was to mitigate the damages, even if they were wrong. You're saying the intent was to recoup something they thought they were entitled to versus trying to harm the other guy. That's correct, and I will point out that they were right. What you're saying is that's a difference in motivation. I agree, Your Honor. It is a different level of intent. What they're intending to do is protect themselves from the harm that is going to be caused to them. I guess I'm struggling with the conceptual basis of this, because what the judge said was this right of set-off is not consistent with the statutory requirement that the principal pay all commissions do. And what your argument sounds to me is if you would say, well, any time I can think of a reason why I should not pay a departing employee or someone who's represented and brought customers to me, and then it's not willful, I'm not doing any harm, I just say, well, I think I have a set-off, or I think the law's going to protect me in this. And by the mere presumption that you might have a legal right not to pay, you don't. It seems that what this judge was saying was that is a willful undermining of the purpose of this statute, which is to see that agents are paid. Now, why would your argument not be a willful violation of the statute? The way the statute was drafted in Ohio, it anticipates there are legitimate circumstances which may occur between parties that would result in nonpayment occurring for a period of time. That's why there's the level of willfulness, the mens rea element that goes with it. You need to establish that intent to harm. Thank you. Go ahead. Certainly. You would still owe, it just wouldn't be trebled. That's what you're saying, right? Absolutely correct, Your Honor. Trebling is what would fall. That is absolutely correct, Your Honor. The judgment for option energy in the amount of $53,000, which we still believe should be offset from the judgment to volunteer energy, would remain. Thank you. You'll have your time for rebuttal solely on your own appeal. Thank you, Your Honor. You have five minutes for rebuttal. I do, Your Honors. And with regard to the treble damages issue, I think that the panel has articulated the rebuttal that I would make probably far better than I could articulate it myself, and I won't try to improve on that. Suffice it to say, the ---- I'm not altogether clear. I think if I had been the district judge, I'd say I wouldn't perhaps vote to uphold the district judge. I don't know. But I would have said that the justification under the statute for trebling is pretty controversial here, willfulness, and that where somebody has a legitimate sort of belief that they're entitled to damages, that's our setoff. That is not the same. That's not willful harm. Well, it is willful, I think, first of all, the statute itself. The motivation there is they owe me this, and I've got a theory, a reason why they owe it to me, and that motivation is not the same as trying to harm someone just for the sake of whatever being mean. Well, but then what that leads to, I think, is exactly what Judge Stranch pointed out, which is that any time that someone is owed commissions and you don't feel like paying them, all you have to do then to escape the penalty of treble damages is come up with some theory as to why I have an offset. I agree. They can try that, but you would have to have the judge agreeing, taking a position about whether that theory has got reason behind it and is a regular, normal, human motivation that people have other than a motivation to harm someone. Well, in this case, but in this case, I don't think the statutory language would support that interpretation. The Ohio Sales Commission Act says it creates an absolute duty to pay commissions when they are due. It uses the word shall, and it says that the principal shall pay the agent commission when those commissions are due. And the common law right of set-off, much deeper, goes way back longer than that, and that's why we have a set-off doctrine that's been with us at the common law for several hundred years. Granted, but the Ohio legislature, when it adopted this statute, did not choose to... They didn't say in there that the idea of a set-off is improper. They didn't say it's improper, but they didn't say... They didn't say one way or another. They just said harm. What they did say is that if you're a principal, you shall pay the commissions when they're due. And the court here found willfulness, and there was willfulness. I mean, frankly, Volunteer admitted that that's what they did. We didn't pay the commission. Let me ask you this. Am I right? You filed, or in your complaint, you claimed under the Michigan statute, but then I guess what, everybody decided that Ohio would control even though you were suing under a statute and not under a contract, or is there a reason that you're not pressing the Michigan statute? The district court at the summary judgment phase determined that the Ohio statute and not the Michigan statute would control over this claim. And you haven't appealed that problem since you won, although... We've not appealed that. All right. That is correct. There was nothing in the agreement about Ohio law. In fact, there was, Judge Merritt. The agreement, the agent agreement between these parties specifically says that Ohio law should apply. Maybe that's the reason he did that. I think that is exactly the reason. But suing under a statute, that is the reason that you fought it up to that point, was that you said, right, we're claiming under a statute, not under a contract. Yes. Our initial theory was that we were claiming under a statute, not under agreement. Everybody's in Michigan. We're located in Michigan, so you have to comply with Michigan law. The district court saw that differently. We were pleased to proceed under the Ohio statute, and that's what we did, and we haven't appealed that. That's correct. I wanted to address that unless the panel has any further questions. Anything else, judges? Okay. Thank you. Thank you. We have three minutes for rebuttal on your appeal. Thank you, Your Honor. In response to the assignments of error that have been set forth by Voluntary Energy, the other assignment of error that hasn't been addressed relates to the ongoing commissions issue. As this court is aware, the district court in the Rule 59e motion amended the judgment to allow the commissions to be paid for any of the remaining agent customers for 48 months rather than 12 months. This was an issue that had not been litigated up until it was referenced in closing arguments and then brought up in the Rule 59e motion. What I'd like to address just very briefly with the court is the background behind the termination and whether or not the provision would apply. In particular, what we have is a contract that provides for commissions for 12 months. If the contract is terminated by Voluntary Energy because of a breach of the agent agreement, we know that there was a breach of the agent agreement that has certainly been established at the district court level. The question then becomes did Voluntary Terminate the agent agreement following the breach? What we know is that Voluntary Energy provided the adequate notice under the contract of a breach. That happened in the fall of 2010. They provided Option Energy an opportunity to cure the breach. It was not cured. Thereafter, when the breach was not cured, Voluntary Energy filed a lawsuit for breach of contract. Only thereafter did Option Energy send a letter to Voluntary Energy saying, well, we're terminating the contract because of your breach of the contract. In response to that, Voluntary Energy's counsel responded, and this was Trial Exhibit 20, responded by noticing counsel saying, no, the contract has been terminated because of the breach. We filed a lawsuit as the client is aware. I think what that establishes is that the commissions would not be paid for 48 months of any of these remaining customers. When you get through, let me ask you a question. Certainly, Your Honor. I'm through on that point, and you may go ahead. If there are any case law on these treble damage commission in these statutes, if there are any case law that would indicate that a setoff, you know, deals with the problem of a setoff under these treble damages laws. Not in Ohio, Your Honor. Not in Ohio, but not anywhere, I take it. Well, Your Honor, there was a case in Michigan that dealt with that issue. Michigan law is against you. You've got to rely on the difference in the language and emphasize the willfulness to get out of that. Is that fair? Your Honor, willfulness is a very important element. I understand, but you're okay. You haven't looked up any cases from other jurisdictions? Other than Ohio and Michigan, I have not, Your Honor. Anything else, counsel? Is the standard on that decision, whether the district judge's decision was clearly erroneous? On the exemplary damages, the standard of review is de novo because exemplary damages are a de novo review. Okay, so complete, and then you're not challenging the courts, a factual finding by the court regarding the credibility of claims. You say we just take it up completely de novo. The factual findings by the court we're not challenging in any respect. Okay, thank you, counsel.  The case will be submitted.